IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ESAD RAMIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:13-CV-4310 |
| | ) | |
| RACHEL LEWIS, | ) | |
| CRST INTERNATIONAL, INC., | ) | |
| NATIONAL UNION FIRE INS. CO., | ) | |
| | ) | |
| Defendants | ) | Hon. Marc H. Cohn |
| | ) | |

## MOTION FOR LEAVE TO AMEND PLAINTIFF'S COMPLAINT TO ADD CLAIM FOR ATTORNEY FEES AND EXPENSES OF LITIGATION

Plaintiff herein, Esad Ramic, and pursuant to **Fed. R. Civ. Pro. Rule 15(a)(2)** seeks leave from the Court to Amend his Complaint by adding **Paragraph 16** to his previously filed Complaint for Damages to add a Count for Attorney's Fees and Expenses of Litigation Pursuant to **OCGA § 13-6-11** which states:

### Recovery of Expenses of Litigation Generally

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

A copy of the proposed Amended Complaint is attached as **EXHIBIT 8**.

# A.

## Summary of The Facts

During discovery in this case, testimony was given that On March 9, 2013 Plaintiff Esad Ramic was operating his 2007 Volvo Cab over Tractor Truck in a safe and prudent manner when his rig was parked in a stationary position in a parking space on private property at a truck stop located off Exit 201 near Interstate 75. While the Plaintiff's vehicle was stationary and the Plaintiff was asleep on the second level of a bunk bed inside his containerized living compartment behind his cab, he was struck by a tractor trailer operated by Defendant Rachel Lewis, who was driving another 18 wheeled vehicle on behalf of and in the scope of her employment with Defendant CRST , which was a contract common carrier engaged in interstate commerce and insured by Defendant National Union Fire Ins. Co.

At the time of the incident, Plaintiff Esad Ramic was parked and not operating his 18 wheeler off of Interstate 75. He was not on any road at the time when it was struck by Defendant Rachel Lewis in the tractor trailer truck operated on behalf of CRST, which was a contract common carrier engaged in interstate commerce. Lewis's vehicle was required by law to yield the right of way to Ramic and avoid striking Plaintiff's vehicle.

The collision between Plaintiff's and Defendant's vehicles was solely caused by the negligent conduct of the Defendant herein, Rachel Lewis, unmixed with any

negligence on the part of the Plaintiff. The injuries inflicted on Plaintiff were solely and proximately caused by Defendants' conduct.

At the time of the incident, while the Plaintiff was in the sleeping capsule located at the rear of Plaintiff's tractor cab [**EXHIBIT 5, 6**] and as a result of the front end impact between his vehicle and the tractor trailer driven by Defendant Lewis in the truck operated on behalf of and as a result of the collision between the Plaintiff and Defendant's vehicle, Plaintiff was thrown from the upper bunk of his bed and onto the metal floor of his self-contained compartment attached to the back of Plaintiff's Volvo tractor trailer. [**EXHIBIT 5**].

As a result of being thrown from the top of the bunk bed onto the floor at approximately 6:55 a.m., the Plaintiff sustained severe permanent injuries and damages to his left shoulder which required surgical repair to numerous parts of the Plaintiff's shoulder.

The negligence of the Defendants herein caused injuries to the Plaintiff, for which he incurred medical expenses in the amount of $121,008.45 making these Defendants liable to the Plaintiff for his injuries.

Defendant Lewis completed a State Issued Personal Report of Accident (**EXHIBIT 7**) as well as providing information to her employer who contemporaneous with receiving the information over the phone from Lewis, prepared a First Incident Report which is attached hereto as (**EXHIBIT 8**)

Throughout this litigation, the Defendants relied on sworn, filed, verified responses to written discovery stating only that Plaintiff's vehicle was struck by the Defendants' truck driven by Defendant Rachel Lewis. This is consistent with the information contained on the reports completed by Lewis and her Employer on **EXHIBITS 7** and **8**).

For example, in her Interrogatory Responses filed on April 25, 2014, Defendant Lewis stated as follows:

### 13.

*Please state in detail how Defendants contend the subject occurrence took place and the order in which the events took place, to include the purpose of the trip, RACHEL LEWIS' destination, and from where she left.* ***Please include in this response a listing of each person, force of nature, act of God, and/or circumstance you believe to have caused or contributed to causing the subject occurrence and/or any of Plaintiff's damages***.

**RESPONSE:**

**Defendant Rachel Lewis states she was pulling into a parking space at the Pilot truck stop when she struck a green Volvo tractor on the front driver's side. [EXHIBIT 1; Resp. ¶ 13].**

However, when Deposition testimony was obtained from Ms. Lewis in this matter nine (9) months later, in November, 2014, her recollection of this accident differed greatly than that given under oath in her written discovery responses

```
                                                                    49
1    that Mr. Ramic was contending that he was back in his
2    little container behind the cab asleep?
3         A    Around February --
4         Q    Okay.
5         A    -- when I first got the call.
6         Q    Okay.
          A    And I thought it was a joke because I had
     given all the information and documentation that I
     could. And it kind of surprised me that the details
     were given the way they were 'cause they were all
     misconstrued --
          Q    Uh-huh.
          A    -- in my perception.
          Q    What was wrong besides he was in his cab?
          A    That...
          Q    I mean, he was in his container asleep.
          A    That was the biggest red flag that I felt
     like it was a fraud because he said he was in a
     sleeper, when I saw him on his cellphone with his
     earpiece on.
          Q    Uh-huh.   ...
```

[EXHIBIT 2 - Lewis Depo. p. 49]

No mention was made by Rachel Lewis or CRST or National Union Fire in their Interrogatory Responses (**EXHIBIT 1**; ¶ 13) about Esad being in his 18 wheeler's driver's seat talking on his cell phone and ear piece on March 9, 2013 at the moment of the collision. When Lewis' Deposition was taken eight months later in November, 2014, she testified and told a completely different story altogether and stated under oath that she observed that a cell phone was being used by Ramic while he sat in the front seat of his tractor trailer back at the time of the incident. [Lewis Depo. p. 61].

This newest version of what happened provided by Lewis at her deposition has since been shown to be a complete fabrication and false statement with such clarity and is so well documented with irrefutable evidence such that no one could believe that Lewis was telling the truth in this later concocted version of the facts

invented solely to give the Defense an opportunity to win this case through the use of perjured testimony.

Even though it is undisputed by both the Defense and Plaintiff that Ramic's and Lewis's trucks collided around 6:50 a.m. EST (5:50 CST) [**EXHIBIT 8**; p. 2] Ramic's cell phone records show that the first call to or from his phone did not take place until over an hour later that day at about 8:00 a.m. [**EXHIBIT 4**]

| 3/08/13 | Clearwater, FL | 10:59 PM | 727-637-2482 |     | 7  |
|---------|----------------|----------|--------------|-----|----|
| 3/09/13 | Clearwater, FL | 12:15 AM | 727-637-2482 |     | 2  |
| 3/09/13 | Clearwater, FL | 8:00 AM  | 727-453-8435 | (F) | 13 |
| 3/09/13 | Incoming       | 8:13 AM  | 727-637-2482 | (A) | 3  |

Lewis testified in her Deposition that as she tried to park her rig, she looked into Ramic's truck cab and saw him seated in the driver's seat talking on his cell phone at the time of the collision (Lewis Depo. p. 34).... despite the fact that Ramic's cell phone records themselves documenting incoming and outgoing calls on that day, show no phone calls were made by Ramic until **more than an hour** after the incident. [**EXHIBIT 4**]

Similarly, it is inconceivable that while Rachel Lewis was about to collide with Ramic's truck and while Esad Ramic was sitting in the driver's seat talking on his cell phone watching the impending collision.... Ramic didn't have the presence of mind to blow his air horn to alert Lewis to what was about to happen. This was not her testimony.

Finally, Lewis has testified that although she hit Esad Ramic's cab (with her vehicle's trailer as she tried to park in a space next to Ramic)..... using Lewis' version of the story.... Ramic continued to calmly remain in the cab sitting in the driver's seat talking on his cell phone and did not even exit his cab upon the impact to immediately inspect the front of his vehicle for damage or speak to Lewis about what happened. According to Lewis, it was the driver of another tractor-trailer parked two vehicles over from Esad Ramic who got out of his truck and began to yell at Lewis because of the collision. [Lewis Depo. pp. 25, 33-35,39]. Even Lewis testified that Esad Ramic was not the first person to get out of a truck to speak to her after the impact.[id.] but rather the driver of a truck next to Esad Ramic's truck who first got out of his truck and began speaking to Lewis prior to Esad's arrival to speak to her.

Rachel Lewis answered the interrogatories sent to her from Plaintiff on April 25, 2014. [**EXHIBIT 1 Resp.** ¶ **13**]. She testified in her deposition that she found out in February, 2014 (at least two months before she answered her Interrogatories) served by the Plaintiff that Esad Ramic was contending that he was in the capsule on the back of his Tractor Trailer (**EXHIBIT 5**) asleep in the top bunk bed at the time of the incident. There was absolutely no suggestion in the Answer filed by Lewis that Ramic was not in the sleeper at the time of this accident. [**EXHIBIT 2**].

Yet, Lewis responded to the Interrogatories served on her by Plaintiff and said

nothing about him sitting in the driver's seat at the time of the Impact. This was two months after she was told that Esad Ramic had said he had been asleep in the top bunk inside of a capsule located at the rear of his truck at the time of the impact.

> Q Okay. When was the first time that you learned that Mr. Ramic was saying that he was asleep back in his cab?
>
> A Around February - - when I first got the call.

[EXHIBIT 2 - Lewis Depo. p. 48-49; EXHIBIT 5, 6]

Lewis further stated on that same page:

> A **That was the biggest red flag that I felt like it was a fraud because he said he was in a sleeper, when I saw him on his cellphone with his earpiece on.**

[EXHIBIT 2 - Lewis Depo. p. 49]

Obviously, if Lewis really, honestly believed and felt that Ramic's pursuit of a claim was fraudulent, Lewis, her employer and insurer, (who are vicariously liable for her negligence) were obligated under **F.R.C.P. Rule 8(c)** and **F.R.C.P. Rule 9(b)** to specially plead the affirmative defense of *fraud* with particularity in their Answers **or** this particular defense will be waived because it is an affirmative defense that is required to be plead in initial pleadings. Failure to do so results in forfeiture all of the Defendants right to so plead these or argue their application to a jury at trial or

examine witnesses, including the Plaintiff, about evidence of same.

Her attorneys have had sixteen (16) months since Lewis said she found this out after learning about the fact from her attorney that Ramic was contending he was asleep in the rear capsule sleeping on the top bunk at the time of impact, and yet no amended Answer or Interrogatory Responses have been filed to plead this information provided to Defense Counsel back in February 2014.

**FRCP Rule 9. Pleading Special Matters**

(A) a party's capacity to sue or be sued;

2) **Raising Those Issues:** To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

(b) **Fraud or Mistake**: Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Similarly, **FRCP Rule 8** states:

(c) Affirmative Defenses.

(1) In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

••• fraud •••

The general rule for pleading affirmative defenses is set forth in Rule8(b)(1)(A): "In responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it."

District Courts ". . .have split over whether the 'plausibility' standard [applicable to Rule 8(a) under those decisions] applies to all Rule 8 pleadings, and hence to affirmative defenses pled in answers."

As one District Court explained, "Plaintiffs are entitled to receive proper notice of defenses in advance of the discovery process and trial." ***Bradshaw v. Hilco Receivables, LLC***, 725 F. Supp. 2d 532, 536 (D. Md. 2010). One Court stated that the plain language of **Rule 8(b)(1)(A)**: "In responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it."

That clearly was not done in this case and Plaintiff has spent considerable effort and expense trying to ascertain this last minute allegation and "dodge" made by Defendant Lewis. The information about Ramic's alleged presence in the cab using his cell phone does not appear in her report to her company (**EXHIBIT 8**) or the report of damage on Private Property (**EXHIBIT 7**) ; it does not appear in the Answer filed by her in this case (**EXHIBIT 2**); the allegation does not appear in the Answer filed by CRST or National Union Fire, nor does the allegation about Plaintiff sitting in his driver's seat talking on his cell phone at the time of impact appear in the Answer filed by National Union Fire or CRST or Lewis.

In the Plaintiff's Complaint, the following two allegations were made:

9.

At the time of the incident, Plaintiff ESAD RAMIC was in the top bunk of

his sleeping container attached to the rear of the Volvo tractor cab and as a result of the impact between his vehicle and the tractor trailer operated by Defendant RACHEL LEWIS in the truck operated on behalf of CRST INTERNATIONAL, INC. and as a result of the collision between the Plaintiff and Defendant's vehicle, Plaintiff was thrown from the top of his bunk bed in his sleeping container and onto the floor of his tractor trailer.

10.

As a result of being thrown from his sleeping capsule onto the floor, the Plaintiff sustained injuries and damages to his left shoulder.

Rather than respond by an unqualified denial of the assertions by someone who has personal knowledge that Ramic was not in the sleeping container bunk bed at the time of the impact, all the Defendants state they lack knowledge and sufficient information to admit or deny the allegations:

9.

Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 9 of Plaintiff's Complaint and therefore deny same and demands strict proof thereof.

10.

Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations contained in Paragraph 10 of Plaintiff's Complaint and therefore deny same and demands strict proof thereof.

In these Answers filed by Defendants, including Lewis, it is not denied by the Defendants that Esad Ramic was in the sleeping container located at the rear of his tractor cab and as a result of the impact between his vehicle and the tractor trailer operated by Lewis.

Since this Answer was filed by all Defendants, including Lewis, if she had information to the effect that Ramic was sitting in his seat talking on a cell phone, then, at a minimum, these specific allegations and averments should have been denied in their entirety.

This is especially true when the case potentially deals with a claim for Attorney Fees and Expenses of Litigation pursuant to provisions of **O.C.G.A. §13-6-11.** The Georgia Appellate Courts have long held that such an award may be assessed in a tort case pursuant to this code section where a Defendant stubbornly denies liability in a clear liability case. See **McDaniel v. Smith**, 266 Ga. App. 637 (2004), where the Court held that in a tort case involving a motor vehicle collision, if a Defendant stubbornly refuses to admit liability, even where Defendant contended there was a genuine dispute regarding other issues (such as damages) in the case, the Court noting that "it is for the jury to determine whether there was a bona fide controversy."

Moreover, the intent of this code section "is to leave the matter of expenses and Attorney Fees to the jury trying the case to decide." **Brannon Enters. Inc. v.**

Deaton, 159 Ga. App. 685 (1981); J. M. Clayton v. Martin, 177 Ga. App. 228 (1985); Jamison v. West, 191 Ga. App. 431 (1989); C. & S. Trust Co. v. Hicks, 216 Ga. App. 338 (1995). "Under O.C.G.A. §13-6-11, the amount of the award of attorney fees as damages is a jury question."

The law in Georgia is quite clear on this issue. **"Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under O.C.G.A. §13-6-11, are generally questions for the jury to decide."** American Medical Transport Group v. Glo-An, 235 Ga. App. 464, 467(3) (1998); Backus Cadillac-Pontiac v. Ernest, 195 Ga. App. 579, 581 (1990); Jim Anderson & Co. v. Partraining Corp, 216 Ga. App. 344, 346 (1995); Rossee Oil Co. v. Bellsouth Telecommunications, 212 Ga. App. 235, 236 (1994).

### B.

**Jury Issues Exist Here As To Whether Defendants' Denial of Liability For the Incident and Resulting Injuries Suffered by Plaintiff on the Basis of False Testimony Contradicted by Documentary Evidence in the Face of Clear Evidence That No Bona Fide Controversy Exists Which Warrant the Imposition of Expenses of Litigation Pursuant to Provisions of O.C.G.A.§13-6-11**

The undisputed facts giving rise to Plaintiff's claim for the significant injuries and damages reflect that he was the victim of a front-end collision by a careless driver of an 18 wheeler. Defendants' efforts to shift blame for their driver's

negligence which resulted in severe injuries to Plaintiff, and their palpably falsified, continued reliance on same, represents nothing more than a " determined effort to avoid paying a legitimate claim."

Defendants, and their actions in continuing to deny responsibility for this incident authorize the recovery of expenses of litigation expenses and reasonable attorneys' fees, pursuant to provisions of **O.C.G.A. §13-6-11**.

> **"It is preferable not to have a single trial judge stand in the shoes of several men and women of various backgrounds who make up a jury and determine what inferences they may draw from the evidence. It is for this reason that trial judges should grant a motion to file Amended Complaint where the evidence is clear, palpable and undisputed."**

**Bruno's Food Stores, Inc. v. Taylor**, 228 Ga. App. 439, 447 (1997).

Moreover, the intent of this code section "is to leave the matter of expenses [and attorney fees] to the jury trying the case." **Brannon Enters. Inc. vs. Deaton**, 159 Ga. App. 685 (1981); Under **O.C.G.A. §13-6-11**, the amount of the award of attorney fees as damages is a jury question that cannot be decided summarily because the question of reasonableness and necessity of the expenses of litigation and attorney fees." **American Medical Transp. Group, Inc. v. Glo-An, Inc.**, 235 Ga. App. 464, 509 (1998); *Young v. Turner Heritage Homes, Inc.*, 241 Ga. App. 400 (1999). The question of whether or not a Plaintiff in a particular case is entitled to recover

expenses of litigation is solely a matter for the jury to determine from the evidence, *Parks v. Parks,* 89 Ga. App. 725 (1954), and an award of expenses and attorney fees will be upheld if any evidence is presented to support it. *Arford vs. Blalock,* 199 Ga. App. 434 (1991); *A.P.S.S., Inc. vs. Clary & Assocs.*, 178 Ga. App. 131 (1986).

"Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under **O.C.G.A. §13-6-11**, are generally questions for the jury to decide." *American Medical Transp. Group, Inc. v. Glo-An, Inc.,* 95 Ga. App. 579, 581 (1990); *Jim Anderson & Co. v. Oil Co. vs. Bellsouth Telecommunications,* 212 Ga. App. 235, 236 (1994).

Any Suggestion by the Defendants that a bona fide controversy is created simply because a Defendant disputes the facts, damages or other issues, no matter how implausible, or unlikely, or incredible their account, is simply not the law in Georgia. As our Court of Appeals explained, it is "*only in the rare case where there is absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues.*" *Mariner Healthcare v. Sovereign Healthcare,* 306 Ga. App 873, 877 (2010). See Also

*Driggers v. Campbell*, 247 Ga. App. 300, 304 (2000).

Any suggestion by Defendants that the facts herein are simply a "swearing match" or difference of opinion about a bona fide controversy would be absurd. The jury has a right under Georgia law to weigh the evidence on each side of a point and conclude that the evidence on one side is so lacking, so implausible, so unlikely, as not to warrant credibility, and under those circumstances, to award expenses of litigation against the party that chose to advance such a position in the face of overwhelming evidence to the contrary. The issues here are not simply a refusal to pay a claim. In the case at bar, Defendant Lewis' fabricated contradictory "testimony" is so hollow and shallow in the light of previous evidence... contrary to the testimony given at her deposition and previously withheld (at best) that a jury should be allowed to assess whether it rises to the level of a bona fide controversy so as to defeat a claim for expenses of litigation, pursuant to provisions of **O.C.G.A. § 13-6-11.**

Finally, it should be noted that a claim for Attorney Fees and Expenses of Litigation under **O.C.G.A. § 13-6-11,** although a claim under state law, is properly plead in cases filed in Federal Court where the underlying criteria are met under this statute, which clearly is the case here. See: *Nat'l Serv. Indus. v. Hartford Acc. & Indem.*, 661 F.2d 458 (5th Cir. 1981); *Vacca v. Meetze*, 499 F.Supp 1099 (SD Ga.

1980); *In Re: Ellerbe*, 177 B.R. 731 (Bankr. N.D. Ga. 1995); *Eways v. Ga. R.R. Bank*, 806 F.2d 991 (11th Cir. 1986).

This 9th day of June, 2015

CLAXTON & CLAXTON, LLC

*/s/ William P. Claxton*

WILLIAM P. CLAXTON

### CERTIFICATION UNDER L.R. 7.1(D)

I hereby certify pursuant to Northern District of Georgia Local Rule 7.1(D) that the above and forgoing **Motion For Leave To Amend Complaint** is prepared in Times New Roman 14 point font in accordance with Local Rule 5.1(B).

### CERTIFICATE OF SERVICE

This is to certify that I have this day served the opposing party or counsel for the opposing party in the foregoing matter with a copy of this Motion For Leave of Court to File Amended Complaint by filing a copy of same in the U.S. District Court for the Northern District of Georgia utilizing the CM/ECF System to deliver a copy of same to Defendants Counsel

This 9th day of June, 2015

*/s/ William P. Claxton*